**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

METAGENICS, INC.,

      Plaintiff,                          **Case No.** 6:04-CV-1555-ORL-22JGG

v.

ATLANTIC PRO-NUTRIENTS, INC.,
an Illinois corporation, and
BRIAN J. BLACKBURN,
an individual,

      Defendant.

_____/

**AMENDED ANSWER,
AFFIRMATIVE DEFENSES
AND COUNTERCLAIM**

      Defendants, ATLANTIC PRO-NUTRIENTS, INC. ("APN") and BRIAN J. BLACKBURN ("BLACKBURN"), by and through the undersigned attorneys of record, respond to numbered paragraphs of Plaintiff's Complaint as follows:

      1.     Defendants APN and BLACKBURN admit the allegations set forth in Paragraph 1 of the Complaint for jurisdictional purposes, however, deny the sufficiency of such allegations.

      2.     Defendants APN and BLACKBURN admit that METAGENICS sells dieting and nutritional supplements to health care professionals throughout the United States. Defendants APN and BLACKBURN are without knowledge sufficient to admit or deny the remaining allegations set forth in Paragraph 2 and, accordingly, deny same.

{OR840325;1}

3.      Defendants APN and BLACKBURN admit the allegations set forth in Paragraph 3 of the Complaint.

4.      Defendants APN and BLACKBURN admit the allegations set forth in the first sentence of Paragraph 4 of the Complaint and admit that BLACKBURN is the President of APN.  Defendants APN and BLACKBURN deny the remaining allegations set forth in Paragraph 4 of the Complaint.

5.      Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 5 of the Complaint.

6.      Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 6 of the Complaint.

7.      Defendants APN and BLACKBURN admit the allegations set forth in Paragraph 7 of the Complaint for jurisdictional purposes only.

8.      Defendants APN and BLACKBURN admit the allegations set forth in the first sentence of Paragraph 8 for jurisdictional purposes only and deny the remaining allegations set forth in Paragraph 8 of the Complaint.

9.      Defendants APN and BLACKBURN admit the allegations set forth in Paragraph 9 of the Complaint for venue purposes only.

10.      Defendants APN and BLACKBURN admit the allegations set forth in Paragraph 10 of the Complaint for jurisdictional purposes only.

11.      Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 11 of the Complaint.

12.     Defendants APN and BLACKBURN admit that METAGENICS sells dieting and nutritional supplements to health care professionals throughout the United States. Defendants APN and BLACKBURN are without sufficient knowledge to admit or deny the remaining allegations set forth in Paragraph 12, accordingly, Defendants deny same.

13.     Defendants APN and BLACKBURN are without sufficient knowledge to admit or deny the allegations set forth in Paragraph 13, accordingly, Defendants deny same.

14.     Defendants APN and BLACKBURN admit that METAGENICS sells dieting and nutritional supplements to health care professionals throughout the United States. Defendants APN and BLACKBURN are without sufficient knowledge to admit or deny the remaining allegations set forth in Paragraph 14, accordingly, Defendants deny same.

15.     Defendants APN and BLACKBURN are without sufficient knowledge to admit or deny the allegations set forth in Paragraph 15, accordingly, Defendants deny same.

16.     Defendants APN and BLACKBURN are without sufficient knowledge to admit or deny the allegations set forth in Paragraph 16, accordingly, Defendants deny same.

17.     Defendants APN and BLACKBURN are without sufficient knowledge to admit or deny the allegations set forth in Paragraph 17, accordingly, Defendants deny same.

18.     Defendants APN and BLACKBURN admit that METAGENICS sells dieting and nutritional supplements to health care professionals throughout the United States. Defendants APN and BLACKBURN are without sufficient knowledge to admit or deny the remaining allegations set forth in Paragraph 18, accordingly, Defendants deny same.

19.     Defendants APN and BLACKBURN are without sufficient knowledge to admit or deny the allegations set forth in Paragraph 19, accordingly, Defendants deny same.

20.     Defendants APN and BLACKBURN are without sufficient knowledge to admit or deny the allegations set forth in Paragraph 20, accordingly, Defendants deny same.

21.     Defendants APN and BLACKBURN admit the allegations set forth in Paragraph 21 to the extent that APN has sold millions of dollars in METAGENICS products on behalf of a METAGENICS as a METAGENICS distributor.  The remaining allegations, if any, are denied.

22.     Defendants APN and BLACKBURN are without sufficient knowledge to admit or deny the allegations set forth in Paragraph 22, accordingly, Defendants deny same.

23.     Defendants APN and BLACKBURN are without sufficient knowledge to admit or deny the allegations set forth in Paragraph 23, accordingly, Defendants deny same.

24.     Defendants APN and BLACKBURN are without sufficient knowledge to admit or deny the allegations set forth in Paragraph 24, accordingly, Defendants deny same.

25.     Defendants APN and BLACKBURN admit the allegations set forth in Paragraph 25 to the extent the Exhibit speaks for itself.

26.     Defendants APN and BLACKBURN admit the allegations set forth in Paragraph 26 to the extent the Exhibit speaks for itself.

27.     Defendants APN and BLACKBURN are without sufficient knowledge to admit or deny the allegations set forth in Paragraph 27, accordingly, Defendants deny same.

28.     Defendants APN and BLACKBURN are without sufficient knowledge to admit or deny the allegations set forth in Paragraph 28, accordingly, Defendants deny same.

29.     Defendants APN and BLACKBURN are without sufficient knowledge to admit or deny the allegations set forth in Paragraph 29, accordingly, Defendants deny same.

30.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 30.

31.     Defendants APN and BLACKBURN are without sufficient knowledge to admit or deny the allegations set forth in Paragraph 31, accordingly, Defendants deny same.

32.     Defendants APN and BLACKBURN admit that METAGENICS products contain printed shelf-life date information.  Defendants APN and BLACKBURN deny the remaining allegations set forth in Paragraph 32.

33.     Defendants APN and BLACKBURN are without sufficient knowledge to admit or deny the allegations set forth in Paragraph 33, accordingly, Defendants deny same.

34.     Defendants APN and BLACKBURN admit that METAGENICS sells its products to distributors who then sell METAGENICS products to third parties. Defendants APN and BLACKBURN are without sufficient knowledge to admit or deny the remaining allegations set forth in Paragraph 34, accordingly, Defendants deny same.

35.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 35 of the Complaint.

36.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 36 of the Complaint.

37.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 37 of the Complaint.

38.     Defendants APN and BLACKBURN admit that a business relationship existed at one time between APN and METAGENICS whereby METAGENICS sold its products to APN who, in turn, sold the products to third parties within parts of the Southeast United States.  However, Defendants APN and BLACKBURN deny the remaining allegations set forth in Paragraph 38 of the Complaint.

39.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 39 of the Complaint.

40.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 40 of the Complaint.

41.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 41 of the Complaint.

42.     Defendants APN and BLACKBURN admit the allegations set forth in Paragraph 42 of the Complaint.

43.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 43 of the Complaint.

44.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 44 of the Complaint.

45.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 45 of the Complaint.

46.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 46 of the Complaint.

47.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 47 of the Complaint.

48.     Defendants APN and BLACKBURN admit that METAGENICS sent a letter dated September 8, 2003.  However, deny the allegations set forth therein.

49.     Defendants APN and BLACKBURN admit that they received a letter from an attorney representing METAGENICS dated September 26, 2003, however, deny the

allegations contained in the letter and the remaining allegations contained in Paragraph 49 of the Complaint.

50.     Defendants APN and BLACKBURN admit that the promotional materials attached to the Complaint as Exhibit F are those of Defendant APN, however, deny the remaining allegations set forth in Paragraph 50 of the Complaint.

51.     Defendants APN and BLACKBURN admit that the promotional materials attached to the Complaint as Exhibit G are those of Defendant APN, however, deny the remaining allegations set forth in Paragraph 50 of the Complaint.

52.     Defendants APN and BLACKBURN admit that the promotional materials contain the METAGENICS trademark and competitive advertising, however, deny the remaining allegations set forth in Paragraph 52 of the Complaint.

53.     Defendants APN and BLACKBURN admit that they received a letter from an attorney representing METAGENICS dated March 24, 2004, however deny the allegations contained in the letter and the remaining allegations contained in Paragraph 53 of the Complaint.

54.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 54 of the Complaint.

55.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 55 of the Complaint.

56.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 56 of the Complaint.

57.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 57 of the Complaint.

58.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 58 of the Complaint.

59.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 59 of the Complaint.

60.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 60 of the Complaint.

61.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 61 of the Complaint.

62.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 62 of the Complaint.

63.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 63 of the Complaint.

64.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 64 of the Complaint.

65.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 65 of the Complaint.

66.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 66 of the Complaint.

67.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 67 of the Complaint.

68.     Defendants APN and BLACKBURN repeat and reallege the responses to Paragraphs 1 through 67 as though fully set forth herein.

69.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 69 of the Complaint.

70.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 70 of the Complaint.

71.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 71 of the Complaint.

72.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 72 of the Complaint.

73.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 73 of the Complaint.

74.     Defendants APN and BLACKBURN repeat and reallege the responses to Paragraphs 1 through 67 as though fully set forth herein.

75.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 75 of the Complaint.

76.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 76 of the Complaint.

77.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 77 of the Complaint.

78.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 78 of the Complaint.

79.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 79 of the Complaint.

80.     Defendants APN and BLACKBURN repeat and reallege the responses to Paragraphs 1 through 67 as though fully set forth herein.

81.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 81 of the Complaint.

82.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 82 of the Complaint.

83.     Defendants APN and BLACKBURN repeat and reallege the responses to Paragraphs 1 through 67 as though fully set forth herein.

84.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 84 of the Complaint.

85.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 85 of the Complaint.

86.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 86 of the Complaint.

87.     Defendants APN and BLACKBURN repeat and reallege the responses to Paragraphs 1 through 67 as though fully set forth herein.

88.     Defendants APN and BLACKBURN are without knowledge sufficient to admit or deny the allegations set forth in the Complaint, accordingly, they deny same.

89.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 89 of the Complaint.

90.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 90 of the Complaint.

91.     Defendants APN and BLACKBURN repeat and reallege the responses to Paragraphs 1 through 67 as though fully set forth herein.

92.     Defendants APN and BLACKBURN are without knowledge sufficient to admit or deny the allegations set forth in the Complaint, accordingly, they deny same.

93.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 93 of the Complaint.

94.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 94 of the Complaint.

95.     Defendants APN and BLACKBURN repeat and reallege the responses to Paragraphs 1 through 67 as though fully set forth herein.

96.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 96 of the Complaint.

97.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 97 of the Complaint.

98.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 98 of the Complaint.

99.     Defendants APN and BLACKBURN repeat and reallege the responses to Paragraphs 1 through 67 as though fully set forth herein.

100.     Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 100 of the Complaint.

101.    Defendants APN and BLACKBURN repeat and reallege the responses to Paragraphs 1 through 67 as though fully set forth herein.

102.    Defendants APN and BLACKBURN are without knowledge sufficient to admit or deny the allegations set forth in the Complaint, accordingly, they deny same.

103.    Defendants APN and BLACKBURN are without knowledge sufficient to admit or deny the allegations set forth in the Complaint, accordingly, they deny same.

104.    Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 104 of the Complaint.

105.    Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 105 of the Complaint.

106.    Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 106 of the Complaint.

107.    Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 107 of the Complaint.

108.    Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 107 of the Complaint.

109.    Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 109 of the Complaint.

110.    Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 110 of the Complaint.

111.    Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 111 of the Complaint.

112.    Defendants APN and BLACKBURN repeat and reallege the responses to Paragraphs 1 through 67 as though fully set forth herein.

113.    Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 113 of the Complaint.

114.    Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 114 of the Complaint.

115.    Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 115 of the Complaint.

116.    Defendants APN and BLACKBURN deny the allegations set forth in Paragraph 116 of the Complaint.

## JURY DEMAND

Defendants ATLANTIC PRO-NUTRIENTS, INC., and BRIAN J. BLACKBURN, demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Defendants ATLANTIC PRO-NUTRIENTS, INC., and BRIAN J. BLACKBURN, pray that:  judgment will be entered in favor of Defendants;  Plaintiff be awarded nothing; the Court order Plaintiff to pay Defendants attorneys' fees; and any such other and further relief as the Court deems just and proper.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of fair use.

## SECOND AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

## THIRD AFFIRMATIVE DEFENSE

APN's actions are no more than comparative advertising.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff has not been injured in any manner as a result of any act of Defendants.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by doctrine of laches and equitable estoppel.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by doctrine of unclean hands and its own inequitable conduct.

## COUNTERCLAIM

Counter-Plaintiff, ATLANTIC PRO-NUTRIENTS, INC. ("APN") by and through its undersigned attorneys, files its Counterclaim against Counter-Defendant METAGENICS, INC., ("METAGENICS") and in support thereof states:

1.      This is a Counterclaim for violation of the Florida Trade Secret Act; the Florida Unfair and Deceptive Trade Practices Act ("FDUTPA"); tortious interference with a business relationship and defamation of APN.

2.      In or about February, 1979, BLACKBURN began a nutritional supplement distribution company in the State of Virginia under the name of NutriDyn Atlantic ("NDA").

3.     NDA sold supplements in an exclusive regional territory comprised of coastal states from Delaware to South Carolina.  NDA enjoyed much success in its exclusive territory, selling nutritional supplements and other health products from numerous suppliers and producers.

4.     NDA built a significant client base and enjoyed much success achieving significant sales growth.

5.     In or about 1987, Jeff Katke, President of METAGENICS, having learned of the success of NDA, asked NDA to consider carrying METAGENICS products.

6.     NDA agreed to carry METAGENICS products on at least four conditions:

  a)     NDA would not be required to sign any contracts;

  b)     NDA would not be limited to selling exclusively METAGENICS products;

  c)     Florida would be added to NDA's sales territory; and

  d)     NDA and would be given exclusive sales rights in METAGENICS products in an exclusive territory.

7.     METAGENICS agreed to the conditions and NDA began selling METAGENICS products in addition to products produced and supplied by other companies. NDA enjoyed much success selling METAGENICS and other products.

8.     In or about 1990, BLACKBURN moved NDA from Virginia to Florida and re-incorporated as an Illinois corporation under the name Atlantic Pro-Nutrients ("APN").

9.     For many years APN enjoyed significant growth selling METAGENICS products as well as products produced and supplied by other companies.

10.     Throughout the APN and METAGENICS business relationship, APN openly sold supplements and products produced or supplied by companies other than METAGENICS.   At times the products sold by APN directly competed with those supplied by METAGENICS to APN.

11.     Upon information and belief, METAGENICS was aware of APN's product sales.

12.     During the normal course of business, suppliers of METAGENICS products were solely responsible for ensuring shelf life quality control as METAGENICS disclaimed all ownership responsibilities as soon as the product was received by the distributor.   Once a product was purchased by a distributor it belonged to the distributor, and METAGENICS did not provide returns or credits to distributors who were unable to distribute METAGENICS products prior to their expiration date.

13.     Upon receiving information that METAGENICS might be sold to a large pharmaceutical company, APN began to research and develop its own line of nutriceutical products as a contingency.

14.     Upon information and belief, METAGENICS was aware of APN's contingency line of products.

15.     In or about 1999, APN entered into an agreement with United Parcel Service ("UPS") for a large volume discount on shipping as a result of APN's affiliation with METAGENICS and other METAGENICS distributors.   Pursuant to the terms of UPS Code of Business Conduct, UPS protects its customers' confidential information.

16.     APN shipped through UPS to virtually all of the customers it had spent so many years building relationships with.

17.     The names and addresses of these customers to which APN shipped were not general knowledge available to the public.  APN expended considerable time, effort and expense compiling its customer lists and shipping lists.  The lists were of great value to APN and, as such, were maintained as confidential by APN.  Accordingly, APN's customer lists were protectable trade secrets of APN.

18.     METAGENICS was not privy to APN's protectable customer lists and knew or should have known that such lists were confidential and maintained in secrecy by APN.

19.     Prior to its termination of APN as a distributor, METAGENICS, through its President, Jeff Katke, admitted to having obtained APN's confidential customer list and shipping lists.

20.     In 2002, METAGENICS, through its President, Jeff Katke, threatened to terminate APN as a distributor unless APN agreed to exclusively distribute METAGENICS products.  APN did not agree to this demand.

21.     In 2002, APN requested METAGENICS produce and supply a specific nutriceutical formulation.

22.     METAGENICS was unable to satisfy the request and gave an overburdened lab as its reason for being unable to produce new formulations. METAGENICS suggested to APN that it seek an alternative lab to produce and supply the formulations.

23.　　APN sought the assistance of a lab other than METAGENICS and had certain specific formulations produced.　These lines were produced under the brand name Xymogen and formulations were CHOLERx, NAC and MELATONIN.

24.　　METAGENICS at all times was aware of the formulations and made no complaints to APN regarding the creation, production or distribution by APN of such formulations.

25.　　In or about August, 2002, METAGENICS awarded APN with its "Top Distributor" award.　APN's METAGENICS product sales were approximately $6,000,000.00 for the year 2002.

26.　　In or about June, 2003, METAGENICS informed APN, via an e-mail correspondence, that APN's growth for June, 2003, was 23% higher than the previous year.

27.　　Later that year, in or about July, 2003, after informing BLACKBURN that METAGENICS had obtained APN's confidential shipping records and client list, Jeff Katke, President of METAGENICS, terminated APN as a distributor.

28.　　In or about January, 2004, during a Metagenics National Sales Meeting, METAGENICS, through its president Jeff Katke, commended APN for taking the initiative and creating a new line of formularies for its customers' satisfaction.

29.　　In 2003 and 2004, numerous APN customers made complaints to APN that METAGENICS' representatives were making false and defamatory statements that attack BLACKBURN personally, attack the safety and efficacy of the Xymogen brand of

products, are false concerning APN's legal right to sell METAGENICS products, and demand customers stop supporting APN and stop purchasing Xymogen products.

30.    METAGENICS has engaged in a willful and malicious practice of disparaging APN products rather than marketing METAGENICS' products.

31.    METAGENICS' representatives made the following statements to APN's customers over the last 18 months:

a.    APN's Xymogen products are inferior products;

b.    APN's products are not effective;

c.    The combination of nutrients in APN formulas are wrong and will not work;

d.    One of APN's products contains an increased amount of a certain amino acid and such an amount would cause heart disease in patients;

e.    APN does not have good quality control practices;

f.    APN's products are not GMP certified;

g.    APN's products are not backed by scientific research;

h.    APN's products are not monitored by a scientist; and

i.    APN is not legally entitled to sell METAGENICS products.

32.    Each of the above statements are false, and METAGENICS knew these statements were false, or made them with reckless disregard to the truth or falsity of the statements.

33.    In addition, METAGENICS' representatives have questioned APN's customer's ethical obligations to effectively treat their patents, for choosing Xymogen products over METAGENICS' products.

34.    METAGENICS' representatives have questioned Brian Blackburn's ability to create and manufacture nutritional products implying to APN customers that he is not qualified, which is false.

35    Because of the willful and malicious false statements made by METAGENICS' representatives, APN and Blackburn to have had expend both time and money to defend the Xymogen product line.

36.    METAGENICS has performed no testing of APN's product line.

## COUNT I
## (MISAPPROPRIATION OF TRADE SECRET)

37.    APN incorporates and realleges the allegations contained in Paragraphs 1 through 36 as if fully set forth herein.

38.    This Count I is for Misappropriation of Trade Secrets by APN against METAGENICS in violation of Fla. Stat. § 688.001, *et seq*.

39.    APN's shipping and/or customer lists are protectable trade secrets pursuant to Fla. Stat. § 688.002(4).

40.    METAGENICS knew or should have known that APN's customer list is a trade secret.

41.    METAGENICS knew or should have known that obtaining APN's customer list and shipping list violated APN's rights in those lists.

42.     METAGENICS knowingly misappropriated APN's protected customer list and shipping list.

43.     APN has been damaged in an amount to be determined at trial and is entitled to damages pursuant to Fla. Stat. § 688.004(1).

44.     APN has been required to hire an attorney in this matter to which it is obligated to pay a reasonable fee.

45.     This misappropriation was intentional, willful, malicious and performed with the purpose of harming APN.  APN is entitled to an award of exemplary damages pursuant to Fla. Stat. § 688.004(2).

WHEREFORE, ATLANTIC PRO-NUTRIENTS, INC., respectfully prays this Court enter judgment against METAGENICS, INC. for:

(A)     An accounting of METAGENICS' profits;

(B)     Damages in an amount equal to the actual losses sustained by APN plus actual profits realized by METAGENICS as a result of its  misappropriation;

(C)     Punitive damages sufficient to serve as a deterrent against such unlawful conduct;

(D)     Attorneys' fees and costs of suit; and

(E)     Such other and further relief as this Court deems just and proper.

## COUNT II
## (TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP)

46.     APN realleges and incorporates by reference the allegations contained in Paragraphs 1-36 as if fully set forth herein.

47.    This Count II is an action for tortious interference with a business relationship by APN against METAGENICS under Florida common law.

48.    As alleged above, METAGENICS, through its employees, agents and representatives, solicited current or potential customers of APN to discontinue their business relationships with APN and establish business relationships with METAGENICS.

49.    To induce customers into discontinuing their business relationships with APN, METAGENICS made false and misleading claims as well as defamatory statements to customers regarding the nature, quality and efficacy of APN products.

50.    METAGENICS also made false statements to customers regarding APN's legal rights to sell METAGENICS products.

51.    METAGENICS has improperly and without privilege, purposely, with malice and intent to injure, interfered with APN's existing business relationships and with prospective business relationships reasonably likely to develop with both APN's actual and prospective customers.

52.    METAGENICS' actions, as alleged, are neither justified or nor privileged.

53.    As a result of METAGENICS improper and intentional interference with APN's existing and prospective business relationship with its actual and prospective customers, APN has suffered financial injury and is entitled to recover damages in an amount to be proven at trial, punitive damages, including reasonable attorneys' fees and costs incurred in bring this action.

54.     APN has no adequate remedy at law for METAGENICS' continued tortious interference and APN is entitled to an injunction enjoining and restraining METAGENICS, its agents, employees or representatives and anyone acting in concert with it from interfering with APN's established or prospective customers as of October 8, 2003.

WHEREFORE, ATLANTIC PRO-NUTRIENTS, INC., respectfully prays this Court enter judgment against METAGENICS, INC. for:

(A)     Actual damages;

(B)     Punitive damages;

(C)     Pre-judgment interest;

(D)     A preliminary then permanent injunction enjoining METAGENICS, its employees, agents, representatives or anyone acting in concert with it from interfering with APN's established and prospective customers as of October 8, 2003;

(E)     Such other and further relief as this Court deems just and proper.

## COUNT III
## (VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

55.     APN realleges and incorporates by reference the allegations contained in Paragraphs 1-36 as if fully set forth herein.

56.     This Count III is an action for the violation of Florida's Deceptive and Unfair Trade Practices Act, by APN against METAGENICS under Fla. Stat. § 501.201 *et seq*.

57.     As alleged above, METAGENICS engaged in unfair methods of competition by misappropriating APN's trade secrets and/or otherwise confidential proprietary information to: solicit and engage APN customers; to defame APN to its existing customers; and to circumvent APN by making false assertions against APN and its products in an effort to force APN customers to become METAGENICS customers.

58.     APN is aggrieved as a result of METAGENICS unfair method of competition, unconscionable acts and practices and unfair and deceptive acts and practices as set forth in Fla. Stats. § § 501.204 and 501.211(1).

59.     METAGENICS actions, as described above, caused financial injury to APN for which APN is entitled to recover damages in an amount to be determined at trial, including reasonable attorneys' fees and costs incurred in bring this action pursuant to Fla. Stat. § 501.211(2).

60.     APN is also entitled to an injunction prohibiting METAGENICS from engaging in willful and malicious unfair methods of competition, unconscionable acts and practices and unfair and deceptive acts and practices under Fla. Stat. 501.211(1).

61     APN has retained legal counsel in this matter and is obligated to pay its counsel a reasonable attorneys' fees.

62.     APN is entitled to recover its reasonable attorneys fees pursuant to Fla. Stat. § 501.2105.

WHEREFORE, ATLANTIC PRO-NUTRIENTS, INC., respectfully prays this Court enter judgment against METAGENICS, INC. for:

(A)     Damages;

(B)     Pre-judgment interest;

(C)     A preliminary, then permanent injunction enjoining METAGENICS, its agents, representatives and those acting in concert with it from engaging in unfair methods of competition, unconscionable acts and practices and unfair and deceptive acts and practices; and

(D)     Attorneys' fees and costs of suit; and

(E)     Such other and further relief as this Court deems just and proper.

## COUNT IV
## (DEFAMATION OF APN)

63.     APN realleges and incorporates by reference the allegations contained in Paragraphs 1-36 as if fully set forth herein.

64.     This Count IV is an action for defamation by APN against METAGENICS under Florida common law.

65.     METAGENICS by virtue of its slanderous and libelous statements to APN customers against the nature, quality and efficacy of APN's products, published or otherwise communicated false or misleading statements against APN.

66.     METAGENICS has published or otherwise communicated these false statements to third persons.

67.     METAGENICS has made the willful and malicious false statements in reckless disregard of the truth.

68.     METAGENICS knew or should have known that the publication of the falsehood was likely to negatively affect APN's business and its relationships with its existing and potential clients and customers.

{OR840325;1}                                    26

69.     APN has been damaged by the actions of METAGENICS in an amount to be determined at trial.

WHEREFORE, ATLANTIC PRO-NUTRIENTS, INC., respectfully prays this Court enter judgment against METAGENICS, INC. for:

(A)     Damages;

(B)     Punitive damages in an amount sufficient to serve as a deterrent against such unlawful conduct;

(C)     Pre-judgment interest; and

(D)     Such other and further relief as this Court deems just and proper.

Date:  _____January 19, 2005_____          Respectfully submitted,


By:  ___/s/ Jon M. Gibbs_____
     Kathryn B. Hoeck, Esq.
     Florida Bar Number:  813060
     Jon M. Gibbs, Esq.
     Florida Bar Number:  494534
     **AKERMAN SENTERFITT**
     Post Office Box 231
     255 South Orange Avenue
     Orlando, FL  32802-0231
     Phone:  (407) 843-7860
     Fax:  (407) 843-6610
     Email:  kathy.hoeck@akerman.com
             jon.gibbs@akerman.com
     Counsel for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 19, 2005, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:  Steven E. Siff, Esq. and Michael Austin, Esq. of McDermott, Will & Emery 201 South Biscayne Boulevard, 22nd Floor, Miami, FL 33131-4336.

> /s/ Jon M. Gibbs_____
> Kathryn B. Hoeck, Esq.
> Florida Bar Number:  813060
> Jon M. Gibbs, Esq.
> Florida Bar Number:  494534